WILLIS, ROBERT E., Associate Judge.
This is an appeal by the Plaintiff from a Final Judgment based upon a jury verdict in favor of the Defendants-Appellees.
*877 The Appellant makes two points on this appeal.
1. Whether the trial court erred in failing to rule as a matter of law that Plaintiff’s decedent was not a guest passenger, and
2. Whether the trial court erred in refusing to admit into evidence Plaintiff’s proffered evidence relating to Defendant’s failure to install signal lights.
This action was brought by Mary Mc-Nulty for the death of her husband Fred McNulty, allegedly caused by the joint and several negligence of Atlantic Coast Line Railroad Company and David McNulty. The latter was the driver of the car in which Fred McNulty was riding at the time of the collision with an ACL train. Both men were killed.
Fred and David McNulty were members of the Executive Committee of the Mc-Nulty chain of banks. Fred was chairman and David was vice chairman. Fred was also the chairman of the Board of Directors of each of the eight banks and the major stockholder.
Plaintiff contended that Fred Mc-Nulty was not a guest passenger and assigns error because this question was referred to the jury for determination.
Plaintiff established that on other auto trips prior to the collision, Fred McNulty often discussed business with his associates, and contends that because this evidence is undisputed the trial judge should have held as a matter of law that Fred McNulty did not come within the terms of the Guest Passenger Statute.
The defense argues that there was a reasonable basis for an inference that the Mc-Nulty brothers were riding together for companionship, fellowship, courtesy or some like reason.
The trial judge ruled that the evidence supported conflicting inferences and therefore, the determination as to the status of the brothers was a jury question.
We concur.
§ 320.59 Fla.Statutes, F.S.A.
Sullivan v. Stock, Fla.App., 98 So.2d 507
Bramble v. Garis, 144 So.2d 324.
The second point made in this appeal is based upon the ruling of the trial judge in refusing to admit Plaintiff’s proffered evidence relative to the failure of Defendant Atlantic Coast Line to install signal lights.
The proffered evidence was to the effect that when the section of SR 54 was planned, the installation of flashing light signals at the crossing was authorized by the State Road Department. The signals were to be paid for by the State. In December, 1960, the ACL agreed to install automatic crossing light signals at the Zephyrhills crossing “as soon as practical after the company is advised by the Department of final approval for construction.” Five months later ACL submitted specifications for the installation to the Road Department and after receiving approval ordered the material. On April 23, 1962, the Road Department advised ACL that the construction of SR 54 was at the stage where the signals could be installed. ACL informed the Road Department that the installation would be made in the third quarter of 1962. On December 12, 1962, when the accident occurred the signals had not been installed.
Other proffered testimony was that the Road Department required no priority as to locations and the work schedule was discretionary with the railroad. At the time of the accident ACL had seven of these projects under way and from the various photographs in evidence and testimony of witnesses, it appeared that there was no basis for the trial court to determine that the crossing should be considered as hazardous.
*878 In Atlantic Coast Line Railroad Company v. Wallace, 61 Fla. 93, 54 So. 893 (1911), the court set forth the following rule:
“The province of the jury is to determine whether under the facts and circumstances in evidence the defendant was negligent as alleged, and, if there was such negligence, whether it was a proximate cause of the injury complained of. (4) While a determination of whether there was negligence does not depend solely upon a compliance with the requirements of statutes, ordinances, or other lawful governmental regulations, for circumstances may require additional precautions and care, yet the prescribing of particular facilities that may be regarded as essential or useful in preventing injuries from trains at railroad crossings in municipalities or elsewhere is a function that is legislative or administrative in its nature. Ordinarily it is not for a trial jury to determine whether particular methods or facilities should have been used to prevent an injury alleged, when such methods or facilities are not prescribed by competent authority or necessarily required by implication of law. But the jury should determine from all the circumstances in evidence in the particular case whether the defendant is liable in damages for a negligent injury as alleged. Any evidence tending to show whether the railroad company exercised all the care and diligence required by the circumstances of the case is admissible; and the jury should determine whether the requisite degree of care was exercised, and not whether a particular kind of safeguard should have been used. The necessity or advisability of requiring the maintenance of gates at railroad crossings in streets of a municipality may be a matter for the Legislature, the local authorities, the railroad commissioners, or a grand jury to determine; but such determination was not within the province of the trial jury in this case.” (P. 894 of 54 So.).
In Lowry v. Seaboard Airline Railroad Company, 171 F.2d 625 (USCA, 5th Cir., 1948), which involved a grade crossing, the declaration alleged that the crossing in question was in a thickly populated section and was much used and was especially dangerous because the view was obstructed and there were no safety devices. The question posed was whether the jury could determine that the absence of automatic gates and warning lights which flashed continuously on the approach of a train such as the company had voluntarily installed on its tracks on Main Street in Jacksonville, Florida, three blocks away from the crossing in question, was negligence. The court said:
“Although the testimony is ample that 63rd Street crossing is much used, and one witness said as much used as Main Street crossing, we do not think a jury could impose the installation of such devices as a specific duty. Neither, the Legislature nor the city government has required it, though either has the power, and custom and general use has not made them the ordinary equipment of a railroad crossing.” (P. 627).
The court then cited the Wallace decision and alluded to the rule that a railroad company operating its trains on the thoroughfare of a village must use greater care than in a less frequented locality, and that the duty of a company is dictated and measured by the exigencies of the occasion and in the light of the condition of things at the place where and the time when an accident happens. The court then stated that these principles have not been departed from in Florida, and:
“The true question here for a jury is not whether safety devices ought to have been installed as a specific ground of negligence, but the question is whether, both parties to the occurrence knowing the crossing was unprotected by such devices and that it was much used, exercised reasonable care and caution that all the circumstances and conditions then and *879 there present required of each, the jury usually being the judge.” (P. 628).
No evidence was presented disclosing that the Zephyrhills crossing had been designated as dangerous or hazardous and from the various photographs in evidence, and from the testimony taken it appeared that there was no basis for such a designation.
It was proven that the crossbuck signs required by Florida Statutes § 351.03, F.S.A. was visible 400 feet from the crossing, that from 100 feet away from the crossing visibility was good for two thousand feet down the railroad track, and that the automobile struck the second locomotive of the train over 70 feet from the front of the train.
We hold that the trial judge properly rejected the proffered evidence.
Affirmed.
LILES, Acting C. J., and PIERCE, J., concur.