ERVIN, Justice
(dissenting):
I find conflict of appellate decisions with respect to the answer the District Court gave to this question:
Whether the trial court erred in refusing to admit into evidence plaintiff’s proffered evidence relating to defendant railroad’s failure to install signal lights?
In the opinion of the District Court, 198 So.2d 876, filed October 21, 1966, the factual situation pertaining to the foregoing question is stated as follows:
“The proffered evidence was to the effect that when the section of SR 54 was planned, the installation of flashing light signals at the crossing was authorized by the State Road Department. The signals were to be paid for by the State. In December, 1960, the ACL agreed to install automatic crossing light signals at the Zephyrhills crossing ‘as soon as practical after the company is advised by the Department of final approval for construction.’ Five months later ACL submitted specifications for the installation to the Road Department and after receiving approval ordered the material. On April 23, 1962, the Road Department advised ACL that the construction of SR 54 was at the stage where the signals could be installed. ACL informed the Road Department that the installation would be made in the third quarter of 1962. On December 12, 1962, when the accident occurred the signals had not been installed.
“Other proffered testimony was that the Road Department required no priority as to locations and the work schedule was discretionary with the railroad. At the time of the accident ACL had seven of these projects under way and from the various photographs in evidence and testimony of witnesses, it appeared that there was no basis for the trial court to determine that the crossing should be considered as hazardous.”
Thereafter, in its opinion the District Court of Appeal answered the question, saying:
“In Lowry v. Seaboard Airline Railroad Company, 171 F.2d 625 (USCA, 5th Cir., 1948), which involved a grade crossing, the declaration alleged that the crossing in question was in a thickly populated section and was much used and was especially dangerous because the view was obstructed and there were no safety devices. The question posed was whether the jury could determine that the absence of automatic gates and warning lights which flashed continuously on the approach of a train such as the company had voluntarily installed on its tracks on Main Street in Jacksonville, Florida, three blocks away from the crossing in question, was negligence. The Court said:
“ ‘Although the testimony is ample that 63rd Street crossing is much used, the one witness said as much used as Main Street crossing, we do not think a jury could impose the installation of such devices as a specific duty. Neither the Legislature nor the city government has required it, though either has the power, and custom and general use has not made them the ordinary equipment of a railroad crossing.’ (p. 627).
“The court then cited the Wallace decision and alluded to the rule that a railroad company operating its trains on the thoroughfare of a village must use greater care than in a less frequented locality, and that the duty of a company *708 is dictated and measured by the exigencies of the occasion and in the light of the condition of things at the place where and the time when an accident happens. The court then stated that these principles have not been departed from in Florida, and:
“ ‘The true question here for a jury is not whether safety devices ought to have been installed as a specific ground of negligence, but the question is whether, both parties to the occurrence knowing the crossing was unprotected by such devices and that it was much used, exercised reasonable care and caution that all circumstances and conditions then and there present required of each, the jury usually being the judge.’ (p. 628).
“No evidence was presented disclosing that the Zephyrhills crossing had been designated as dangerous or hazardous and from the various photographs in evidence, and from the testimony taken it appeared that there was no basis for such a designation.
“It was proven that the crossbuck signs required by Florida Statutes § 351.03, F.S.A. was visible 400 feet from the crossing, that from 100 feet away from the crossing visibility was good for two thousand feet down the railroad track, and that the automobile struck the second locomotive of the train over 70 feet from the front of the train.
“We hold that the trial judge properly rejected the proffered evidence.”
It appears to me this holding conflicts in principle with the Wallace case cited by the District Court, i. e.: Atlantic Coast Line Railroad Co. v. Wallace (1911), 61 Fla. 93, 54 So. 893. In that case the facts were:
Mary Wallace, plaintiff, as a pedestrian was struck by a railroad train while she was crossing the railroad track on a street in the town of Live Oak. The trial court charged the jury that if the jury should find that the maintenance of gates and watchmen at the street crossing was reasonably necessary and that they were not provided, the railroad was guilty of negligence. The Supreme Court reversed the trial court and had the following to say at pages 894 and 895 of 54 So.:
“ * * * the prescribing of particular facilities that may be regarded as essential or useful in preventing injuries from trains at railroad crossings in municipalities or elsewhere is a function that is legislative or administrative in its nature. Ordinarily it is not for a trial jury to determine whether particular methods or facilities should have been used to prevent an injury alleged, when such methods or facilities are not prescribed by competent authority or necessarily required by implication of law. * * * The necessity or advisability of requiring the maintenance of gates at railroad crossings in streets of a municipality may be a matter for the Legislature, the local authorities, the railroad commissioners, or a grand jury to determine; but such determination was not within the province of the trial jury in this case. * * *
“ * * * There was no allegation or proof that the maintenance of gates at the street crossing where the injury occurred was either authorized or required by any governmental authority, or that gates were the only practical means of rendering the crossing safe, or other showing that would make a failure to maintain gates at the street crossing negligence as matter of law.”
The conflict arises from the fact the District Court approved the trial court in ruling inadmissible evidence that the State Road Department had duly determined as a governmental function that automatic flashing light signals should be installed at the State Road-railroad Zephyrhills crossing where the accident occurred. However, in Wallace it is noted our Court held that whether particular warning devices are necessary at a railroad-street crossing is a function or *709 determination to be exercised by governmental authority. It follows logically that our Court there indicated a rule of law that if a particular traffic warning device is duly required at a particular railroad-highway crossing by proper governmental authority and if same is not installed, these facts could be introduced as an element of the evidence for a jury to consider in determining whether a railroad was negligent in a crossing accident.
In this case it appears that the State Road Department, pursuant to its statutory authority, had determined timely, well in advance of the completed construction of the section of State Road 54, that automatic crossing light (flashing) signals would be necessary for public safety and should be installed at the Zephyrhills crossing where plaintiff-petitioner’s husband was later killed in the accident. This administrative determination was implemented by the State Road Department duly notifying ACL thereof and securing the latter’s agreement in December, 1960 to install said signals. The agreement provided that the signals were to be paid for by the State. The installation by ACL was to be made “as soon as practical after the Company is advised by the Department of the final approval for construction.” Five months later ACL submitted specifications for the installation to the Department and ■ after receiving approval ordered the material. In April 1962, the Department advised ACL the road construction was at the stage where the signals could be installed. ACL informed the Department that the installation would be made in the third quarter of 1962, but they had not been installed when the accident occurred on December 12, 1962.
In view of the foregoing it is difficult to understand how the District Court could conclude no evidence was presented to show the crossing had been designated or determined by the State Road Department to be dangerous. The Department appears to have complied with Sections 320.45 and 320.-46, F.S.1961, F.S.A., in making it known to ACL it considered the crossing dangerous-by contracting with it for the timely installation of the automatic flashing signals. A proviso in the latter section reads:
“ * * * that where railroad warning signs have already been placed, or shall hereafter be placed, at any railroad crossing by the state road department, said railroad companies shall not be required to erect or maintain additional signs or reflectors at such crossings.”
Installation of the flashing light signals at the Zephyrhills crossing pursuant to the contract therefor would have fully satisfied the requirements of Sections 320.45 and 320.46, F.S.1961, F.S.A. for warning signs at dangerous crossings. The action of the Department clearly indicates it considered said crossing more than ordinarily dangerous, requiring the flashing light signals rather than the usual crossbucks prescribed by F.S. Section 351.03, F.S.A., or the signboard required by Section 320.46, F.S.1961, F.S.A. Under Sections 320.45 and 320.46, F.S. 1961, F.S.A., the Department’s requirement that flashing light signals be installed was tantamount to a designation that the Zephyrhills crossing was dangerous, of which ACL had full knowledge.
In the Wallace case it is quite apparent our Court followed the general rule of law that where there is an administrative determination that particular facilities are essential in preventing traffic injuries from trains at railroad crossings in municipalities or elsewhere, it is the duty of the railroad to install them and failure to install them is an evidentiary matter bearing upon the question of negligence for the jury to consider with all the evidence.
In 44 Am.Jur., Railroads § 395, the text reads in part:
“It is the duty of a railroad to take such precautions as the nature of a crossing of a highway or street requires with respect to operation of trains. * * * The legislature may empower a state commission to compel railroad companies to provide safeguards at crossings of railroads *710 with highways and to determine the measures to be taken for the protection of the public traveling upon the highways. * * *
There is ample statutory authority for the foregoing administrative determination and action of the State Road Department respecting the installation of the automatic flashing light signals. Moreover, it stands to reason that if a crossing required flashing light signals it is a dangerous crossing per se.
F.S. Section 317.021, F.S.A., formerly F.S. Section 317.02, F.S.A., reads:
“State Road Department may adopt sign manual. — The state road department may adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this chapter, for use upon highways within this state. Such uniform system shall correlate with, and so far as possible conform to, the system then current as approved by the American association of state highway officials.”
Section 317.01(12), F.S.1961, F.S.A., defined official traffic control devices as:
“All signs, signals, markings, and devices, not inconsistent with this chapter, placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic.”
F.S. Section 335.14, F.S.A., reads in part:
“Traffic devices on state highway system. — The board shall designate and prescribe the location, form and character of informational, regulatory and warning sign, curb and pavement or other markings and traffic signals installed or placed by any public authority, or other agency, upon any road in the state highway or state park systems. No such sign, marking or signal shall be located or placed without the approval of the board * *.”
In State Road Department of Fla. v. Lewis (Fla.1950), 79 So.2d 699, our Court stated:
“Highways and railroads are essential for the transportation of property and people. The mere building of a highway is not complete unless safety and dangerous hazards are considered. We cannot escape the fact that one of the great hazards to human life is the grade crossing, where highways and railroads intersect. In the construction of modern highways, one of the greatest duties placed upon road building authorities is to conserve human life by elimination, as far as possible, of dangerous and hazardous conditions.” (at 704)
While unquestionably the State Road Department had statutory authority under F.S. Section 335.14, F.S.A., and also under its general statutory powers as the state’s highway agency, long prior to the accident here considered to determine the need for flashing light signals at the Zephyrhills crossing or any state road-railroad crossing, and make provision therefor, the Legislature at its 1963 Session specifically spelled out such authority in F.S. Section 338.21, F. S.A., which reads in part:
“(2) Every railroad company maintaining a railway-highway crossing shall, upon reasonable demand and notice from the department, install, maintain and operate at such crossing an automatic flashing light signal, the design of which shall be mutually approved by the department and the railway company, so that it will give to the users of such road reasonable warning of approach of trains or cars on the tracks of said railroad company, the cost of such signals and the expense of installation to be paid from the moneys described in subsection (1).” Sec. 1, Ch. 63-88.
The statute as now revised specifically authorizes the use of any road funds, whether state or federal aid, for erecting flashing light signals. The language just quoted is an express confirmation by the Legislature of this long existing authority of the *711 State Road Department. The ACL by contract recognized this authority and agreed to cooperate in protecting highway motorists at the crossing. In so doing, it acknowledged the need for the flashing light signals. Under these conditions failure on ACL’s part to install such signals timely is a pertinent consideration for the jury in determining negligence along with all the evidence.
The administrative determination of the Department accepted by the ACL was sufficient on its face to establish the dangerous nature of the completed Zephyrhills crossing and put the ACL on notice of its duty to follow through expeditiously for the safety of the travelling public with the installation of said signals.
The evidence of the lack of automatic flashing light signals at the crossing was admissible as one element of all the relevant circumstances determinative of the Railroad’s liability.
In 44 Am.Jur. Railroads § 520, at pages 764 and 765, the text summarizes authorities pertinent to this inquiry. Excerpts therefrom read:
“520. Safeguards, Generally; Lights, Gongs, Gates, etc. — The general rule is that a railroad company is not under a duty, in the absence of statute or order, to provide safety devices at crossings, such as gates, lights, flashing signals, gongs, or other safeguards, or to provide watchmen or flagmen, and that failure to do so is not negligence per se. The mere fact that no statute exists, or that no order by an authorized person has been made, requiring gates or other safety devices at crossings, will not, ipso facto, relieve the railroad company from the duty of providing one at a crossing sufficiently dangerous to require it. If a gate, bell, or other signal is reasonably necessary to warn travelers so that they may avoid danger, then such signal should be provided whether required by statute or not. It is generally held that the absence of gates, gongs, or other safety devices may be submitted to the jury, along with the other evidence in a case, for the purpose of enabling them to determine whether, under all the circumstances, the railroad company was guilty of negligence at the time of the accident, although under the particular circumstances disclosed by the evidence, submission of the question to the jury may not be warranted. * * * ”
******
“Where there is a valid statute, ordinance, or order requiring gates, gongs, or other safety devices, failure to provide and operate them is sufficient to sustain a finding of negligence.
“It is generally held that the statutory requirements for safety devices at crossings merely prescribe the minimum of care, and when the crossing is dangerous and prudence demands it, additional safety devices must be provided to the extent necessary to meet the situation. The conditions at a crossing may create such special hazards as to require a watchman, gate, or other warning to a traveler in addition to the warning device required by the statute, and where the evidence shows that a railroad crossing is for any reason peculiarly dangerous, it is a question for the jury whether the degree of care which a railroad company is required to exercise to avoid accidents at crossings imposes on the company the duty to provide safety devices at that crossing. * * * ” (emphasis ours)
It seems to me that our Court in Wallace has decided that the determination as to whether automatic flashing light signals or other warning device at a particular highway-railroad crossing are necessary is a governmental or administrative determination and the trial judge should not have refused admission of the proffered evidence showing the State Road Department had determined the flashing light signals should be installed at the crossing where the accident occurred. Neither should the District Court under such circumstances have agreed with the trial court and concluded that because the crossing had not been for *712 mally designated a dangerous one by the State Road Department, and because the only testimony taken did not indicate there was any basis for such designation, the proffered evidence was properly rejected. The rule in Wallace and the weight of authority relating to admissibility of evidence concerning absence of warning devices in crossing accident cases is that the governmental determination therefor may be shown in evidence.
In following Lowry v. Seaboard Airline Railroad Company, supra, a case wherein the Federal Court was careful to point out there was no showing of a governmental determination of the need for a particular warning device at the crossing involved, the District Court relied upon a case not pertinent or parallel to the instant case where the State Road Department had determined flashing light' signals were necessary at the crossing where the accident here considered occurred. In Lowry, as in Wallace, there was no such governmental determination. In the instant case there clearly was such a determination.
I do not see how the court’s description of certain physical conditions at the crossing ruled out admission of the Department's determination of the need there of flashing light signals or just why sucli description has any bearing upon the question of the admissibility of evidence showing such determination. Counterbalancing the physical conditions the District Court mentioned, was evidence from a State Road Department engineer that departmental surveys in the planning stage of the highway indicated the completed crossing was of a kind which would require the extra protection of flashing light signals. The very nature of the crossing itself considered in relation to traffic speed and other pertinent factors caused the Department to conclude the extra protective signals were necessary.
The plaintiff in this case offered evidence to prove the proper governmental agency to make such administrative determination, viz., the State Road Department, had duly and timely made the stated determination and had communicated its decision to the ACL, which accepted it without objection. This evidence went to prove the official necessity for flashing signals at said crossing as a traffic safety measure. The absence of such signals at the time of the accident tended to prove the ACL had not complied expeditiously with a governmental requirement that the signals were necessary and should be installed by ACL to warn motorists at the particular crossing. I think such facts were relevant and should have been admitted as important elements determinative of the question of liability. Moreover, rejection of such evidentiary facts in view of the nature of the causé' is certainly not harmless error.
This case presents a puzzle and especially it must to the plaintiff-petitioner. On the one hand, under the Wallace and Lowry decisions it was held mere evidence of the absence of flashing light signals at crossings could not be shown because the necessity for same was not a jury question but was a matter for governmental determination. (Incidentally, this rule is contrary to the general rule; see 44 Am.Jur., Railroads § 520, text 764.) On the other hand, despite the rule in Wallace and Lowry that the necessity for such signals is a governmental determination, proffered evidence was rejected in this case showing the determination of the State Road Department that such signals were necessary at the crossing and that the Department had taken timely official action to get them installed by ACL and in operation well before the highway crossing over the railroad was completed, but that they had not been installed by ACL when the accident occurred.